Good morning, or rather good afternoon, and welcome to the Ninth Circuit. We've submitted several cases. We've got two argued cases this afternoon. The first of them is Bank of America and Federal Housing Finance Agent v. Summit Real Estate Group. On my day sheet, I've got 10 minutes aside rather than 15. There we are. And we've got counsel ready. I can see one counsel, but not the other. Yes, Your Honor, it's Michael Johnson for Amicus, the Federal Housing Finance Agency. Appellee Bank of America is seated to all of its time to us, so I will rise and argue once my good friend, Mr. Wright, is seated. And can both of you hear me? Yes, Your Honor. You're remote, so you're not masked. If you have trouble hearing us through the mask, please let us know, but we will try to speak up. So, when you're ready. Okay. Thank you, Your Honor. May it please the Court, my name is John Wright. I represent Summit Real Estate Group. If I may reserve two minutes of time. Okay, keep your eye on the clock and count down. So, Your Honor, this is another 106-240 case. It's similar to others. However, this one does have a different fact pattern that's slightly different than the other ones that I've seen that are present before the Ninth Circuit and the Nevada Supreme Court. And that is because in this case, there's actually two rescissions. And the second rescission is the only one that actually mentions deceleration. That makes it very different than other cases, because as the Court has noted before regarding Glass, the Glass situation, we have one rescission. The Supreme Court has not taken up certain language in that rescission that is present in our case that we're asking the Court to take notice of. And in particular, in light of the second rescission. So, looking at the first rescission, could you clarify what you think is the language in the 2011 rescission that's different from what was addressed in Glass? Yes, what happened in Glass is the Court did not address this language. And though I believe it's similar language in the Glass case, it was never addressed by the Supreme Court. And that language is about middle of the paragraph. It states this, speaking of the rescission itself, shall not be deemed, shall be deemed to be only an election without prejudice, not to cause a sale to be made pursuant to such notice of default and election of sale. Well, now, they, but they didn't, I mean, the opinion in Glass does not mention that language. But your, your friends on the other side say that if we, if we look at what was actually before the Court in Glass, that the language was the same. Are they wrong about that? The language is similar. However, I can tell you it wasn't the focal point of the argument or the briefing. And it was not mentioned in any regard whatsoever by the Nevada Supreme Court. And it's important, obviously, because it's self-limiting language, it limits the scope and extent of the notice of default. And it doesn't mention acceleration. I think in our case, it becomes crystal clear because of the second rescission, which has the same language about what the effect of it is in terms of not curing the sale, et cetera, but goes beyond that and says that it shall be deemed to be only an election without prejudice, not to cause a sale and to withdraw and revoke without prejudice, the acceleration of the note or deed of trust. So there would be no cause for the second rescission if the first rescission was either had the effect of or even had the intended effect of removing the escalation or deescalating. And that's what's particularly different about this case. And it's hard to ignore the fact that there's a second rescission, and that it substantially deviates on the first one, it adds language to it. But it may be belt and suspenders. The fact that they gave a second rescission doesn't necessarily mean that the first rescission didn't have the effect that they had hoped for. It may only mean that they were worried that somebody was going to make an argument comparable to the argument you're now making. Let me ask you a different question. And that is, we've got this ancient lien statute that says at the end of 10 years, the lien just goes away, period. Why isn't the 10 year period told once a suit is filed, because a suit was filed here before 10 years was out? Sure. Well, first of all, for several reasons. One, it's a statute of repose, and there's no equitable tolling and a statute of repose. Secondly, the litigation, well, I think that's based on a premise that that isn't true, Your Honor. And that is, the statute of repose doesn't require any act to be taken by the bank in terms of foreclosing on its lien. It doesn't say that. It doesn't say you've got 10 years to foreclose on your lien. It simply says that the rights under the deed of trust will extinguish after 10 years, once all sums have become wholly due. And that act of making sums become wholly due is a voluntary act that's taken up by the bank. The bank is the one who pulls the trigger and commences the 10 year period. So in your view, if a lawsuit is begun, say, three or four years out, and for reasons beyond the control of the initiator of the lawsuit, the lawsuit takes 10 years and a day, game's over, lost the lawsuit? The lawsuit has no effect on it whatsoever. And that's illustrated by the fact that... No, no, I think your answer is that yes, he's out of luck as soon as he gets... Well, he's out of luck at 10 years period, irrespective of if there's a lawsuit or not a lawsuit, simply because they put that into motion. They could certainly take action during the litigation. And that's the fallacy of their argument. They say, well, there's nothing we could do. We have this litigation going on. Well, the litigation didn't concern this, number one. But secondly, the fact is they recorded the second rescission during litigation. And all that the statute requires in order for them to protect themselves is to decelerate the acceleration, which they created. It doesn't require a lawsuit. First of all, there is no statute of limitations for foreclosing in the state because we don't have judicial foreclosure as a necessity. You can do judicial foreclosure, but we have non-judicial foreclosure. So there is no statute of limitations. Let's assume that we agree with you on both points, that the first rescission was ineffectual, and that the filing of the lawsuit does not stop the running of the 10-year period. Let's get to the argument that the federal government is interested in, and that is why is not this ancient lien statute preempted by federal law? Well, because of the arguments that they raise are essentially two. One is that under 4617, a longer period of limitation would apply over the state one, I mean, if there were six years. Let me back that up. There's a six-year or unless the state one is longer. The state statute here is 10 years. So how is there any conflict? If there's no conflict, there's no preemption. There's no field preemption, certainly. The question is, when does the federal statute start to run? Yeah, and their argument is that the federal statute begins to run when the HOA foreclosure took place, which is a complete non sequitur. It absolutely nothing to do with the default. They're the ones, they're the only ones who can pull the trigger to start the 10-year period. And they do that by declaring all sums due, which is what they did. That doesn't happen with respect to HOA foreclosure or any other foreclosure for that triggering event has absolutely no relationship to 106-240 whatsoever. It is all of their own doing. They're the only ones who can pull that trigger. I believe I have that's my two minutes. Let's hear from the other side and we'll make sure you get a chance to respond. Thank you. Thank you, Your Honor. It's Michael Johnson representing the Amicus Curiae, the Federal Housing Finance Agency. You know, the this case is really about the application of a broad federal statute that allows any action brought by or on behalf of the conservator or Fannie Mae or Freddie Mac to come within, in this case, six years of the date of accrual. Statute mentions accrual, it's triggered by accrual, and it gives the conservator at least six years to bring that action. My friend Mr. Wright argues that under state law, the conservator had less time to bring the action. Less time. Statute gives the conservator more than six years. So 4617B12 applies. So talk to us about the accrual period, because I think you have a disagreement with the counsel on the other side. Well, so what Mr. Wright is saying is that our claim is time bar. That's what he's saying. He's asserting 106-240 as a time bar to our quiet title claim. Right? The under 4617B12A, which says that the applicable statute of limitations with regard to any action brought by the agency as conservator is, in the case of any contract claim, either six-year period beginning on the date on which the claim accrues or, if longer, the period applicable under state law. Well, my friend Mr. Wright says the period under state law applies, but it's shorter than six years. That's how he argues that the claim is time bar. He says it timed out after a couple years. Well, that's not longer than six years. That's shorter than six years. And the broad language of the statute says there's going to be one limitations period here for a quiet title claim. And it's going to be either six years from accrual or, if longer, some period under state law, maybe 8, 10, 12 years from accrual. But we can't start the one at a different starting line than the other. We have to measure both from accrual. That's what a limitations period means here. So I think that's really the key question here. Mr. Wright presents really a semantic argument that tries to compare apples and oranges. He wants to say, hey, 10 is a bigger number than six, so it must be a longer period. I thought you were going to argue preemption rather than interpretation of the state statute. No, we are. It is preemptive. It is preemptive. But of course, to be preemptive, it has to apply. And so Mr. Wright's argument is that I think he basically concedes that if applicable, it would be preemptive. His argument is that it doesn't apply because 10 is a bigger number than six. And therefore, somehow, even though he claims it would be timely under the six-year provision, it has already been timed out. And somehow, the state year period is longer than the six-year period. I won't make his argument for him. May I ask just sort of an antecedent question? If we were to agree with the argument that you've made based on glass, that the statute doesn't apply here at all, is there any reason for us to address the preemption question? Yes, there is. It's practical reason, not legal reasoning. The state law rationales we outlined in the brief that Bank of America outlined in the brief and that FHFA adopted are sufficient to resolve this case. The practical point, though, is that this isn't the only case presenting these issues. And as this court recognized in the NationStar v. Saticoy Bay Millican Avenue trust case, the people similarly situated to Mr. Reich's client have strong economic incentives to prolong litigation by raising a number of issues that are not meritorious. And this, I humbly submit, is one of them. And so what we want is a clear statement that however these state law issues come out, and there are a number that parties similarly situated to Mr. Reich's client However, the Nevada Supreme Court, in its time, eventually addresses all of those many issues, which are important for cases where the loan is not owned by an entity in federal conservatorship. But where it is, we don't need to get to those issues. And we can resolve all those cases in wholesale with a published, broad decision holding that 4617 of B-12 preempts and says that if the conservator or someone acting on the conservator's behalf brings a claim within the six-year period that statute authorizes, it is timely, notwithstanding whatever period might apply under state law. And this court has already held that in connection with a materially identical statute. Now, that's in the NCUA case cited in our brief. The case, the court addressed the question whether it matters that the state statute is a statute of repose or a statute of limitations, said that doesn't matter. The Nevada Supreme Court reached the same conclusion in the Rhodes case cited in the brief. Even if there were some third category, a decision we cited in our brief, the LVM case, a district court decision, applied the same rationality to the Latches doctrine. So any state law doctrine, statutory, common law, whatever, that would leave the conservator with less time to bring a claim is preempted. Counsel, could you just explain to me, procedurally, when was the preemption issue first raised? So preemption was raised in the district court. The district court resolved it. It's in the briefs. By whom? By Bank of America. And the district court resolved the case on other grounds. Then, in this appeal, Mr. Wright did not address preemption. Bank of America and FHFA, as amicus, raised the issue, argued it thoroughly, not in a footnote or a short side note or anything like that. It's a whole section of Bank of America's brief, and it's the main focus of FHFA's brief. Mr. Wright ignored it. Mr. Wright ignored it. So there are waiver and forfeiture implications here. Now, I think the court could resolve on that basis, hold that it's an alternate grounds for affirmance and that Mr. Wright conceded it by not addressing it. But I think the better course would be to say, it's right. The statute is preemptive. And maybe that's why Mr. Wright didn't address it in his brief and waited to oral argument to make any of these points. But the court really should, if it agrees that the statute is preemptive, and I think that's the only way the court could resolve this case consistently with its NCUA precedent, it should issue a published decision that puts these many other cases where this issue either is raised or may be raised in the future. Because we have many counterparties who are asserting other non-meritorious grounds of appeal and have indicated in some, in various forums that they may bring a 106-240 claim later. So we need clear guidance that that statute does not apply where the conservator or, as in this case, someone acting on the conservator's behalf has timely brought a quiet title action under 4617B. Now, in terms of practicality, in terms of helping your litigation strategy and cutting off the long drawn-out lawsuits that, according to you, are being drawn out purposely in order to continue to collect rents or value from the property, how helpful would it be if we were to hold, as I think the Virginia court has done with respect to its ancient Lee and statute, that the 10 years or whatever the period is for the particular statute, here is 10, stops running as soon as suits filed? It would also be very helpful. I think it would be a roughly equally helpful doctrine. And certainly these cases are all ones where this argument crops up in the middle of a dispute, where so all interested parties are aware that the owner of the deed of trust maintains its interest and it just can't go forward with a foreclosure as a practical matter during a dispute about the validity of the instrument upon which it seeks to foreclose. So a decision holding that litigation about the validity of the deed of trust tolls a doctrine that might otherwise extinguish the deed of trust would be helpful. Now, Mr. Wright says you can't do that because 106.240 is a statute of repose and equity is supposedly off limits. That's just flatly contradicted by the Nevada Supreme Court's pro max decision, where the court remanded to see how an equitable doctrine, their equitable estoppel would apply. Now, if equity were off limits, there would have been no need for a remand. Mr. Wright may say, well, estoppel is different. That's not quite right. Equitable estoppel is a form of equitable tolling. It tolls the time bar based on the inequitable behavior of the party seeking to invoke it. I see my time is up. I'd be happy to answer any further questions. Any further questions from the bench? OK, thank you very much. Thank you, Your Honors. And Mr. Stephen, you save some time. You know, I'm sorry, it's Mr. Wright. You save some time. I did. Thank you. First off, I want to address the straw man argument they make that we're arguing that they didn't bring their quiet title action on time. That's that's not correct at all. We've never argued that. In fact, the 10 year period expired during the litigation in this case. So that wouldn't be something we would even be able to have claimed to begin with. They said that you have to go with the federal statute because by going with the 10 years, it's going to be less time. I don't understand where there's less time for them to do whatever they need to do in order to protect themselves. There is no action to take. It's not a statute of limitations. It's not telling them you must foreclose within 10 years. They can extend, they can decelerate, which they've proven they can do. And they did that during the course of litigation. So there's absolutely nothing preventing them from doing that. One thing I want to mention is that there is a pending case. I don't know if you're aware of it or not, but in front of the Nevada Supreme Court on the issue of the secondary language of the notice of default. It's on a petition for rehearing. It's case number 81293. Similar to the last, but the SFR Investments, who is the appellant in that one, requested a petition for rehearing and the Supreme Court directed the respondent to And that brief is due November 29th. But again, the district court only rule did not even get to preemption. We did brief it in the lower court, but it was not something that the district court even came to. It came to simply relying on glass. And our big problem, obviously, is that glass does not take into consideration as far as anybody can tell the limiting language of the notice of default. Okay, any further questions from the bench? Thank you. Thank both of you for your helpful arguments. Bank of America versus Summit Real Estate now submitted for decision. Thank you. Thank you, Your Honor.
judges: SCHROEDER, FLETCHER, MILLER